Robert L. MILBY et al., Appellants,

v.

George C. MARTIN, Appellee.

Court of Appeals of Kentucky.

June 3, 1955.

Stoll, Keenon & Park, John L. Davis, Lexington, for appellants.

Stanley M. Saunier, Lexington, for appellee.

MILLIKEN, Judge.

This appeal is from a judgment of the Fayette Circuit Court in which the appellee, George C. Martin, a building contractor in the City of Lexington, was awarded $3,759.20, with interest, as an additional sum due from appellants, Robert L. Milby and wife, in payment for a house built by Martin for the Milbys under what the trial court determined was an oral cost-plus contract. The judgment awarded appellee a mechanic's lien upon the house to insure payment. The appellants paid the appellee the amount awarded and appealed.

On February 25, 1950, Martain entered into a written contract with Milby to construct a house for Milby on a lot located on Albany Road in suburban Lexington. The contract was written on an "Offer to Purchase" form used by realtors. Milby signed the offer by the terms of which he agreed to pay $14,300 for a house on a specified lot to be constructed in accordance with plans and specifications. The written instrument recited that there was a deposit of $1,500 good faith money with George Martin to be applied to the purchase price upon the passing of the deed, or refunded should title prove not merchantable, and the balance of the purchase price was to be paid upon passing of the deed, "Subject to purchaser being able to

obtain F. H. A. Loan for $12,000 * * *. The deposit of $1,500 is to be refunded if for any reason the title does not pass to the Purchaser on or before June 25, 1950, * * *." Martin signed the offer, signifying his acceptance, but neither Martin nor the Milbys at that time owned the named lot where the house was to be built. On June 25, 1950, the deadline named in the offer, the Milbys had not acquired title to the property, and, of course, construction on the house had not begun during the four-months' running of the contract.

In June, 1950, the Korean War began, and Martin naturally was unwilling to undertake construction under the agreement because he stood to lose on account of rapidly rising construction costs. As a matter of fact, only $500 of the $1,500 good faith money mentioned in the offer actually had been deposited with Martin, and it was not refunded as stipulated in the writing when title to the property failed to pass to the Milbys by June 25, 1950. The trial court apparently concluded that the writing was ineffective after June 25, 1950, and that the parties later entered into an oral agreement to construct the house on a cost-plus basis. The house was completed in February, 1951, but the appellants moved into it in January, shortly before completion, and have occupied it since then. At the time this suit was commenced, appellants had paid $12,600.26 on the purchase price of the house.

Contractor Martin's version of the cost-plus agreement, which the trial court found existed between the parties, is as follows:

"I told him (Milby) there were some materials which were hard to get and some that were impossible to get, that prices had gone up, and the only way that I would proceed with the building of that house was to work out a cost, plus a fair profit, *if the cost of the house was too much for him to accept, that we sell the house and that we split the profits.*"

Appellants argue: (1) The court could not render a personal judgment against them even under Martin's version of the terms of the cost-plus contract; (2) it could not, as a matter of law, find that the original written contract expired by its own terms on June 25, 1950, nor as a matter of fact was rescinded, canceled or abandoned; and (3) if the written contract was not in some manner rendered inoperative, then Martin was under a pre-existing legal duty to construct appellants' house and, consequently, there was no consideration for the subsequent oral cost-plus agreement.

The Milbys contend that even if the entire testimony of appellee, Martin, is accepted as true, the trial court was clearly in error in rendering a personal judgment against them for any deficiency or difference between the amount paid and the cost of constructing the house on a cost-plus basis. They point out that the agreement, according to Martin, was that the house be built on a cost-plus basis and if, upon completion of the house, the total cost of building it was more than the appellants wanted to pay for it, the house would be sold and if any profit were realized from the sale it would be split between them. Appellants argue they could pay for the house or refuse to pay for it in their discretion, and if they chose to refuse to pay for the house it was to be sold and the profits split, and the very filing of this suit makes it obvious that they have chosen to refuse to pay for the house, wish it sold, and the profits split between them and Martin.

Appellants are, in effect, claiming their right of election under the oral agreement was still available to them at the time this suit was commenced. However, the facts show appellants moved into the house in January, 1951, even before it was completed, and have occupied it since; that they have rented out the upstairs apartment and received the rents therefrom; and that at the time suit was commenced, they had paid $12,600.26 toward the purchase price, leaving a balance of $3,759.20 due under the cost-plus contract. In the light of this evidence, it cannot be seriously contended that they have not elected to purchase the house themselves. Appel-

lants' right of election under the oral contract had to be exercised promptly, Thompson v. Fairleigh, 300 Ky. 144, 187 S.W.2d 812, and it was so exercised here when they moved into the house.

The appellants further argue that as a matter of law the trial court erred in assuming that the written contract expired by its own terms on June 25, 1950. The provision of the contract with respect to this point is as follows:

"Balance will be paid upon passing of the deed, subject to purchaser being able to obtain F. H. A. Loan for $12,-000. The deposit of $1,500 is to be refunded if for any reason title does not pass to the Purchaser on or before June 25, 1950."

It is admitted by appellants that title did not pass prior to June 25, 1950, and by appellee that the $500 good faith money deposited with him was not refunded. The trial court was justified in concluding that the $500 was retained by Martin pending negotiation of the cost-plus agreement. The written offer, in effect, provided that it was to terminate June 25, 1950, if title to the property did not pass by that time, which it did not. In view of the language of the written agreement, this court would hardly be justified in saying the trial court was wrong in finding that as a matter of law the written offer had terminated prior to the time the parties entered into the cost-plus contract.

Appellants' third ground for reversal, i. e., that there was no consideration for the subsequent oral cost-plus contract, since appellee was under a pre-existing duty to construct the house for appellants under the written offer, is premised upon acceptance of the view that the written offer had not terminated. Since we believe the written contract had terminated at the time the oral cost-plus agreement was made, we find no merit in this contention.

We conclude, therefore, that the trial court properly construed the written contract to have expired on the date expressed in it. Time is usually of the essence of building contracts, and this contract in that respect was not unusual. Costs of materials and costs of labor are not constants, but variables, and especially has this been true in this post-war decade. The trial court was justified in concluding that it was the intention of the parties to terminate the written contract at the specified time. Had costs decreased, the appellants would have been pleased to admit that it had terminated.

The judgment is affirmed.